VITRO ELECTRONICS, Division of Vitro Corporation
of America *v.* MILGRAY ELECTRONICS, INC.

[No. 34, September Term, 1969.]

*Decided November 10, 1969.*

499

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*H. Hughes Spragins*, with whom were *Tomes, Spragins & McDonald* on the brief, for appellant.

*James J. Cromwell* for appellee.

FINAN, J., delivered the opinion of the Court.

This case sheds light on the question of how short is the Maryland "Long Arm" statute. Maryland Code (Repl. Vol. 1965) Article 75, § 96.[1] The appeal is from a ruling of the Circuit Court for Prince George's County which granted defendant-appellee's motion to dismiss for lack of jurisdiction over the appellee, a foreign corporation. The sole issue before this Court is whether the motion was properly granted.

Plaintiff-appellant, Vitro Electronics, is engaged in the production of sophisticated electronic devices, many of which are used by the federal government in its space and missile programs. Vitro is a Delaware corporation duly qualified to do business in Maryland. In November, 1966, Vitro contracted with Milgray/Washington, Inc., to purchase a number of electronic parts. Milgray/Washington, Inc., a Maryland corporation, was informed that any parts furnished would have to comply with a certain government specification known as MIL-E-1. Mil-

---

1. *The 'Long Arm' Comes to Maryland,"* 26 Md. L. Rev. 13 (1966) by Professor Bernard Auerbach.

gray/Washington, Inc., proceeded to order the necessary parts from Milgray Electronics, Inc., a New York corporation which owned 100% of the common stock of Milgray/Washington, Inc.

The parent corporation sent the parts to its subsidiary which then sent them to Vitro. After receiving them, Vitro became concerned that the parts might not meet government specifications and requested a certificate of compliance to which it was entitled under its contract with Milgray/Washington, Inc. The appellee addressed this certificate directly to the appellant and transmitted it to Milgray/Washington, Inc., who in turn sent it to the appellant. With this assurance, Vitro began to manufacture its product. However, the government refused to accept the finished items because specification MIL-E-1 was not complied with. Vitro then filed suit in the court below alleging breach of contract, negligence, and fraud against both Milgray/Washington, Inc., and the appellee. The appellee made a motion to dismiss the suit against it for lack of jurisdiction. After an evidentiary hearing, Judge Bowie granted a motion to dismiss. At the hearing the following undisputed facts emerged. Milgray Electronics, Inc., owned 100% of the common stock of Milgray/Washington, Inc. The officers of both corporations were the same. The accounting obligations of both corporations were performed by the same accountant in New York. Milgray Electronics, Inc., maintained a telephone listing in a Washington directory which covered suburban Maryland, giving a Maryland address, although in an affidavit it maintained that this listing was continued as a result of an error. Milgray/Washington, Inc., stocked a supply of the appellee's components on inventory; however, it often purchases such items from others. The appellee and Milgray/Washington, Inc., maintained separate corporate books, separate minutes, separate records, and separate and distinct accounting procedures, and held separate directors' meetings. The contract between the appellee and Milgray/Washington, Inc., was executed in New York. The record is not clear as to

where the certificate of compliance was executed or as to how it was delivered. The issue before this Court is whether on these facts Maryland can entertain jurisdiction over this New York corporation.

The appellant would have us hold that the courts of Maryland have jurisdiction over the appellee on the basis that it has maintained a sufficient presence in Maryland to subject itself to the provision of our "Long Arm" statute, Maryland Code (Repl. Vol. 1965) Article 75, § 96 which provides in pertinent part:

> "Personal jurisdiction over person [includes corporations] as to cause of action arising from business, etc., in State.
>
> "(a) A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's
>
> "(1) transacting any business in this State:
> * * *
>
> "(3) causing tortious injury in this State by an act or omission in this State;
>
> "(4) causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State . . . ."

The appellant first urges upon us that Milgray/Washington, Inc., although a subsidiary of and a separate corporation from its parent, the appellee, was in effect a branch office of the appellee. It would have us pierce the veil of corporate fiction and construe the relationship between the two as that of principal and agent with the actions of Milgray/Washington, Inc., being those of the appellee. The appellant endeavors to bring this relationship within the ambit of *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 105 A. 2d 225 (1954), or failing that, within the scope of *Novack v. National Hot Rod Assoc.*, 247 Md. 350, 231 A. 2d 22 (1967). Further, the appellant

presses the argument that under the more modern interpretation given to "transacting business," the appellee's minimal contacts gave it sufficient presence within the State. Therefore, following traditional notions of fair play and substantial justice, it would not be a denial of "due process" to hold it amenable to the jurisdiction of Maryland. *Hanson v. Denckla,* 357 U. S. 235 (1958) ; *International Shoe Co. v. State of Washington,* 326 U. S. 310 (1945). We think, however, that the lower court was correct in its finding from the evidentiary hearing that Milgray/Washington, Inc., was not a branch office of the appellee.

There are numerous cases which hold that a foreign corporation is not construed as doing business within a state merely because of its ownership of all of the shares of stock of another corporation doing business in the state. See *Rucker v. Personal Finance Co.,* 90 N.E.2d 428 (Ohio 1948) ; *Moorhead v. Curtis Publ. Co.,* 43 F. Supp. 67 (D. Ky. 1942) ; *Garber v. Bancamerica-Blair Corp.,* 205 Minn. 275, 285 N. W. 723 (1939) ; *Consolidated Textile Corp. v. Gregory,* 289 U. S. 85 (1933) ; *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U. S. 333 (1925).

It is true that most of the cases cited above ante-date the decision of the United States Supreme Court in *International Shoe Co., supra,* wherein the Court expanded the area for state jurisdiction over foreign corporations and nonresident individuals where there was a showing that certain minimum contacts had been maintained in the forum state sufficient to warrant the exercise of jurisdiction without offending "traditional notions of fair play and substantial justice." See also *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 164, 215 A. 2d 812 (1966) ; *Frummer v. Hilton Hotel Internat'l, Inc.,* 19 N.Y.2d 533, 227 N.E.2d 851 (1967) ; *Longines-Wittnauer Watch Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965).

We are impressed with the opinion in *Hilton Hotel, supra,* in which Chief Judge Fuld, writing for a majority of the court, found Hilton Hotels Ltd., a British

corporation, amenable to jurisdiction in the State of New York for a personal injury which occurred at the London Hilton which it leased and operated. The British corporation was owned in common by Hilton Hotels Corporation and Hilton Hotels International, Delaware corporations doing business in New York (who were also named defendants) and which corporations also owned Hilton Reservations Service. This latter corporation had a New York office, bank account, and telephone and confirmed, without charge, reservations for the London Hilton as well as any other Hilton Hotel. Hilton Reservations Service also did public relations and publicity work for the London Hilton. In holding the British corporation amenable to action in New York, the Court went beyond the New York "Long Arm" statute and found that by virtue of the activity of Hilton Reservations Service it was "doing business" in New York "in the traditional sense." The Court found, "in short—and this is the significant and pivotal factor — the Service does all the business which Hilton (U. K.) could do were it here by its own officials."

There can be no question but that Judge Fuld in *Hilton* expresses the liberal trend in court decisions tending to extend jurisdiction over foreign corporations and nonresident individuals. According to the dissenting opinion in *Hilton,* the net result of the majority opinion is to brush aside the corporate fiction and to consider the acts of the subsidiary as those of the parent corporation.[2]

---

2. The dissenting opinion in Hilton noted:
". . . The majority bridges the gap between these two rules by finding that separate but affiliated corporations perform the localized services, albeit local services of the narrowest scope, on behalf of the foreign corporation and, therefore, the foreign corporation is performing the localized services here, thus subjecting it to personal jurisdiction. This, of course, is a *non sequitur,* unless there is no power or privilege on the part of business enterprises to limit and segregate their assets, liabilities, and suability, if done, in fact, and if done without fraud or deception, by the utilization of separate adequately financed corporations, either subsidiary or affiliated." 227 N.E.2d 851 at 857.

On the facts, we think the case at bar is distinguishable from *Hilton.* Milgray/Washington, Inc., was not, as was the subsidiary in *Hilton,* engaged in doing public relations work or publicity for the parent company in the forum state. The rationale adopted in *Hilton,* however, would enable the Maryland courts to assume jurisdiction over the appellee for, to paraphrase Judge Fuld, "Milgray/Washington, Inc., does all the business which Milgray Electronics, Inc., could do were it here by its own officials." However, we are not prepared to adopt a doctrine which, in our opinion, would have the effect of breaking down observed distinctions between parent and subsidiary corporations, where fraud or deception is not present, nor do we think it necessary to go that far in the case at bar to extend jurisdiction to the appellee, should the record warrant it, and concerning which more will be said later.

In the instant case, without destroying the corporate fiction between parent and subsidiary, it is difficult to find from a review of the record even minimal contacts by the appellee in this State. We have already made the distinction on the facts between this case and *Hilton,* and certainly, looking at the Maryland decisions, there was no representative of the appellee in Maryland whose actions placed the corporation within the factual pattern by which jurisdiction attached in *Thomas v. Hudson Sales, supra.*

It is true that in *Gilliam v. Moog Industries, Inc.,* 239 Md. 107, 210 A. 2d 390 (1965), we recognized that the "Long Arm" statute passed in 1964 was to provide for a more flexible approach to jurisdiction: [3]

> "It seems clear that the purpose of the Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached

---

3. However, it is questionable whether the Maryland statute is as broad as the permissible constitutional limits of due process would allow. See 26 Md. L. Rev. 13, at p. 25 (1966).

as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as *International Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95; *McGee v. International Life Ins. Co.,* 355 U. S. 220, 2 L.Ed.2d 223; and *Hanson v. Denckla,* 357 U. S. 235, 2 L.Ed.2d 1283." Id. at p. 111.

However, in *Moog,* the Court did not reach the question of whether the "Long Arm" statute (Ch. 95 of the Laws of 1964) which was effective June 1, 1964, applied to that case as the declaration in the suit, as well as a motion to quash the writ of summons, had been filed many months prior to the effective date of the Act. Chief Judge Hammond in *Novack v. National Hot Rod Ass'n, supra,* gave an excellent resumé of the "Long Arm" statute with reference to those activities or contacts which bring a foreign corporation within the purview of the statute. In that case we held the fact that the contract between *Hot Rod,* a foreign corporation, and Aquasco, the association which operated the local drag strip track in Maryland, was made in California was not decisive, and the fact that the foreign corporation had "engaged in a persistent course of conduct in Maryland in sending its agents into the state on five occasions within a period of little more than a year to inspect the certified Aquasco Track . . ." (Id. at p. 357) made it amenable to jurisdiction.

The weakness in the appellant's case, as we have already stated, lies in the fact that the appellee engaged in none of the activities which add up to a persistent course of conduct in this state, such as:

". . . direct solicitation by sales representatives in the state, the sending of price lists to customers through the mails, general mail advertising combined with advertising in periodicals circulated in the state, participation with the locally franchised dealer in promoting sales,

and the presence in the state of service and maintenance representatives . . . ." 26 Md. L. Rev. 13 at p. 43 (1966).

Coupled with this lack of direct contact in Maryland, the record supports the fact that the appellee, although sharing officers and an accountant with its subsidiary, nonetheless, took pains to maintain separate records, separate and distinct accounting procedures, separate corporate books, and held separate directors' meetings. We cannot, out of hand, brush aside these observed distinctions.

From the brief and argument presented by the appellant, it would however appear that the appellee may have committed a purposeful tortious act in Maryland which would have subjected it to the jurisdiction of this State by virtue of §§ (a) (3) of § 96, Art. 75. We are referring to the execution of the certificate of compliance. It is obvious from the facts that the appellee stood to realize some commercial advantage by manufacturing the components and that its certificate of compliance was a serious and important document and one upon which it knew, or should have known, the appellant would rely. The fact that the contract to supply the components was between the appellant and Milgray/Washington, Inc., and that the appellee was not privy to it is not decisive. We are of the opinion that had the execution of the certificate taken place in Maryland or even had manual delivery of it been made by the appellee to Milgray/Washington, Inc., in Maryland, or had the appellee requested Milgray/Washington, Inc., to deliver the certificate which it had addressed to the appellant, such action would have constituted a purposeful act within this State and an act which could have, if the certificate had been fraudulently or negligently executed, caused tortious injury to the appellant.[4]

---

4. Restatement, 2d Conflict of Laws, § 52 incl. Comment b and

However, from the present state of the record, one cannot determine just where the certificate of compliance was executed or exactly how it was transmitted from Milgray Electronics, Inc., to the appellant. The appellant in its record extract includes excerpts from the deposition of Harold Paine, the manager of Milgray/ Washington, Inc., which tend to show that the certificate of compliance was executed by a representative of the appellee in the Maryland office of Milgray/Washington, Inc. Counsel for the appellee, both in his brief and argument, is quick to point out that the deposition of Mr. Paine, pertaining to the execution of the certificate of compliance, is a deposition from another case [Law No. 34998, in the Circuit Court for Prince George's County] and is not a part of the record of the appeal which is before us [Law No. 36, 747, in the Circuit Court for Prince George's County].

We fully realize that the burden of proof is on the plaintiff-appellant in this case, even though the evidentiary hearing went only to the question of jurisdiction and did not reach the merits of the case. However, we are reluctant to grant either an affirmance or reversal on the basis of the record before us. We are of the opinion that "the substantial merits of the case will not be determined by affirming or reversing or modifying the judgment from which the appeal was taken" and that the purposes of justice will be advanced by remanding

---

Reporter's Note [Proposed Official Draft, Part I, May 2, 1967], also cited in the dissenting opinion in *Frummer v. Hilton Hotels Internat'l, Inc.*, 227 N.E.2d 851 at 858, contains this interesting statement:

"b. *Subsidiary of corporation.* * * *

"If the subsidiary corporation does an act, or causes effects, in the state at the direction of the parent corporation, the state has judicial jurisdiction over the parent to the same extent that it would have had such jurisdiction if the parent had itself done the act or caused the effects.

"Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence."

the case to the lower court for the taking of further testimony to determine where the certificate of compliance was executed and the manner and circumstances under which it was transmitted to the appellant. Maryland Rule 871. We are of the opinion that if either the execution of the certificate of compliance or manual delivery of it was accomplished by the appellee or its representative in Maryland, such act would be sufficient to allow the lower court to entertain jurisdiction over the appellee. Accordingly, we think the case should be remanded to the court below without affirmance or reversal for the taking of further testimony with reference to the execution and delivery of the certificate of compliance. Maryland Rule 871.

> *Case remanded without affirmance or reversal for further proceedings in conformity with the guidelines set forth in the above opinion, assessment of costs to await final outcome of the case.*