2 F.3d 56
 RICO Bus.Disp.Guide 8366
 MYLAN LABORATORIES, INCORPORATED, Plaintiff-Appellant,
v.
AKZO, N.V., Defendant-Appellee,
and
Raj Matkari; Ashok Patel; Dilip Shah; Raju Vegesna;
Mohammed F. Azeem; Charles Chang; David J. Brancato;
Jin-Shung Chang; Walter Kletch; Jan T. Sturm;
Pharmaceutical Basics, Incorporated; Par Pharmaceuticals,
Incorporated; Quad Pharmaceuticals, Incorporated; American
Therapeutics, Incorporated; Vitarine Pharmaceuticals,
Incorporated; American Home Products Corporation; Quantum
Pharmics, Limited; Steven Colton; Salvatore J. Pinella, Defendants.
 No. 92-1826.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1993.
Decided Aug. 6, 1993.
Amended by Order Filed Aug. 19, 1993.
 
 Judah Best, Debevoise & Plimpton, Washington, D.C., argued (W. Stephen Cannon, Joseph H. Gibson, Wunder, Diefenderfer, Ryan, Cannon & Thelen, on brief), for plaintiff-appellant.
 Donald John Mulvihill, Cahill, Gordon & Reindel, Washington, DC, argued (Kathy Silberthau Strom, Scott A. Martin, on brief), for defendant-appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 We must decide whether a federal district court may assert personal jurisdiction over a foreign parent corporation solely because the parent's third-tier subsidiary corporation, over which the parent exerts no control, conducts business in the forum state. We hold that it may not.
 
 
 2
 * On June 8, 1989 Mylan Laboratories, Inc. ("Mylan") brought this action in the United States District Court for the District of Columbia, seeking damages and injunctive relief for alleged violations of the federal antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968, and the Maryland common law of unfair competition and malicious interference with business relations. Mylan's complaint named as defendants several manufacturers, sellers, and distributors of generic prescription drugs, including Akzo, N.V. ("Akzo"), a Dutch corporation having its principal place of business in the Netherlands, and Pharmaceutical Basics, Inc. ("PBI"), a Delaware corporation that maintains its principal place of business in Illinois. Mylan's complaint alleged that between 1984 and 1989 the defendants conspired to facilitate and accelerate the United States Food and Drug Administration's ("FDA") approval of their abbreviated new drug applications for generic drugs, or "ANDAs," and to delay or impede approval of ANDAs submitted by competing drug manufacturers, including Mylan.
 
 
 3
 Akzo promptly moved to dismiss Mylan's complaint for lack of personal jurisdiction. Before ruling on Akzo's motion, the district court found that venue was improper in the District of Columbia and ordered the case transferred to the District of Maryland pursuant to 28 U.S.C. Sec. 1406(a).[1] On August 15, 1991 the United States District Court for the District of Maryland issued a memorandum opinion and order dismissing all of Mylan's antitrust claims and a substantial number of its RICO claims. Although it did not dispose directly of Akzo's pending motion to dismiss for want of personal jurisdiction, the court stated that
 
 
 4
 Akzo is only named in Mylan's suit because it is the parent company of PBI; unlike Par, [another defendant], it is not alleged to have had any agents busily undermining the raison d'etre of the FDA.
 
 
 5
 Mylan Labs., Inc. v. Akzo, N.V., 770 F.Supp. 1053, 1077 n. 41 (D.Md.1991). Shortly after the Maryland district court's action, Akzo renewed its motion to dismiss for lack of personal jurisdiction.
 
 
 6
 After hearing oral argument on Akzo's motion, the district court read into the record a memorandum order holding that because it could not assert personal jurisdiction over Akzo, it was required to dismiss Mylan's complaint as to the Dutch corporation. See Mylan Labs., Inc. v. Akzo, N.V., No. R-90-1069, at 15 (D.Md. June 19, 1992) (oral opinion). In so ruling, the court relied upon the following findings of fact: (1) Akzo and PBI have no ownership interest in each other; (2) PBI is a third-tier subsidiary corporation of Akzo, being owned by Akzo Pharma, Inc. ("Akzo Pharma"), which in turn is owned by Akzo; (3) PBI and Akzo have no officers and directors in common; (4) Akzo is not authorized to conduct business in Maryland or anywhere else in the United States; (5) Akzo is not actually present in Maryland; and (6) the corporate functions of Akzo and PBI are rigidly separated. Id. at 1-15 (oral ruling). Based upon these findings, the court reasoned that the Maryland long-arm statute, Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103(b) (1989 & Supp.1992), which Mylan had asserted as supporting jurisdiction, did not authorize it to exercise personal jurisdiction over Akzo. Id. at 15. The court therefore dismissed Akzo from the action, and Mylan took this appeal.
 
 
 7
 Mylan presents two questions for decision: (1) whether the district court erred as a matter of law in determining that it could not assert personal jurisdiction over Akzo; and (2) whether the district court abused its discretion in denying Mylan's motion to take discovery on the personal jurisdiction issue. We consider these issues in turn.
 
 II
 
 8
 When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307 (4th Cir.1986); 2A James W. Moore, Moore's Federal Practice p 12.07[2.-2] (1985 & Supp.1992-93). Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction. Combs, 886 F.2d at 676. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. Id.; Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 908 (4th Cir.1984), cert. denied, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). To the extent that the district court's conclusions concerning whether the plaintiff has proved personal jurisdiction rest upon legal precepts, those conclusions are reviewed on appeal de novo. Combs, 886 F.2d at 676. To the extent the district court's conclusions are based on findings of fact, however, such findings should not be disturbed by an appellate tribunal unless clearly erroneous. Id.; Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 717 (4th Cir.1966).
 
 
 9
 To prove that the district court may assert personal jurisdiction over Akzo, Mylan must show (1) that a statute or rule authorizes service of process on Akzo in the District of Maryland;[2] and (2) that service on Akzo comports with the requirements of the Due Process Clause of the Fourteenth Amendment.[3] See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102-03, 108 S.Ct. 404, 408-09, 98 L.Ed.2d 415 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Mylan contends that the Maryland long-arm statute, Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103(b) (1989 & Supp.1992),[4] authorizes the district court to assert personal jurisdiction over Akzo. The purpose of the Maryland long-arm statute is to give the courts of the state personal jurisdiction over all out-of-state defendants who purposefully avail themselves of the privilege of conducting activities in Maryland, thus invoking the benefits and protections of Maryland law. See Novack v. National Hot Rod Ass'n, 247 Md. 350, 353-57, 231 A.2d 22, 24-26 (1967). The statute permits the Maryland courts to assert personal jurisdiction over (1) persons who directly conduct activities in Maryland; and (2) persons who conduct activities in Maryland through an agent.
 
 
 10
 In the proof it adduced below, Mylan made no attempt to show that Akzo possessed direct contacts with Maryland at the time this action commenced. Under these circumstances, service of process on Akzo can be proper only if Akzo's relationship with its third-tier subsidiary and co-defendant PBI is that of principal to agent. Mylan contends that such a relationship exists, because (1) as PBI's parent corporation, Akzo controlled significant business activities of PBI in Maryland, warranting attribution of those activities to Akzo; (2) Akzo indirectly owns all the outstanding common stock of PBI, through its direct stock ownership of Akzo Pharma; and (3) certain allegedly criminal acts committed by PBI employees were performed with the intent to benefit Akzo, rendering Akzo liable for those acts in Maryland.
 
 
 11
 The Maryland Court of Appeals, whose authoritative interpretations of the Maryland long-arm statute bind us,[5] see Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), has adopted the so-called "agency" test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes. See Vitro Elec. v. Milgray Elec., Inc., 255 Md. 498, 501-03, 258 A.2d 749, 751-52 (1969). Originally advanced by Justice Brandeis in Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 335-38, 45 S.Ct. 250, 251-52, 69 L.Ed. 634 (1925), this test allows a court to attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary. Central to the exertion of such control, and thus to whether the corporate veil may be pierced, is whether significant decisions of the subsidiary must be approved by the parent. See Finance Co. of Am. v. BankAmerica Corp., 493 F.Supp. 895, 903-08 (D.Md.1980). Other relevant factors include whether the parent and the subsidiary maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings. Vitro Elec., 258 A.2d at 753. Another consideration in deciding whether to pierce the corporate veil is the level of interdependence between parent and subsidiary; if the Maryland courts are to refrain from exercising jurisdiction over the parent, the subsidiary "[must] have some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." Harris v. Arlen Properties, Inc., 256 Md. 185, 200, 260 A.2d 22, 29 (1969). Finally, the court must find that Akzo knew, or should have known, that its conduct would have some impact in Maryland. Finance Co., 493 F.Supp. at 907.
 
 
 12
 Mylan urged the district court to approve the exercise of personal jurisdiction over Akzo because the resume of Jack Van Hulst, PBI's chief executive officer, stated that he worked for Akzo at the time this action commenced.[6] In response to this assertion, Akzo submitted an affidavit in which Van Hulst denied ever having been employed by Akzo. The district court rejected Mylan's proof, noting that it believed Van Hulst's resume was "puffed," and concluded from Van Hulst's affidavit that he was not employed by Akzo. Mylan now urges us to reverse the district court's reliance on Van Hulst's affidavit, arguing that in the absence of an evidentiary hearing it is entitled to have the court infer from Van Hulst's resume that Van Hulst was employed by Akzo.
 
 
 13
 Although it is true that the plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in his favor, district courts are not required, as Mylan suggests, to look solely to the plaintiff's proof in drawing those inferences. As we stated in Combs v. Bakker, 886 F.2d 673 (4th Cir.1989),
 
 
 14
 [i]n considering a [personal jurisdiction] challenge [in the absence of an evidentiary hearing], the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.
 
 
 15
 Id. at 676 (emphasis added). Thus, the district court correctly looked both to Mylan's and to Akzo's proffered proof in ruling upon Akzo's motion. Taking Van Hulst's resume in its most credible light, as we must in reviewing the grant of a motion to dismiss, we find that Mylan's assertions carry the same quantum of trustworthiness as Akzo's sworn affidavit. Construing both documents in the light most favorable to Mylan, we believe that the district court erred in resolving the matter of Van Hulst's employment in Akzo's favor.
 
 
 16
 Nevertheless, the fact that Van Hulst may have been employed by Akzo does not justify an automatic decision to pierce the corporate veil between Akzo and PBI. We must also consider, as the district court properly did, any other evidence Akzo adduced in support of its motion. In so doing, we observe with the district court that affidavits submitted by Akzo demonstrate that Akzo and PBI have no ownership interest in each other, that PBI is merely a subsidiary of Akzo Pharma, and that the two defendants have no officers or directors in common. The corporate functions of Akzo and PBI, it appears, are rigidly separated; Akzo does not exert any control over the marketing, purchasing, pricing, management, or operating policies of PBI. PBI maintains its own books and records, forms its own contractual relationships with debtors and creditors, and has its own manufacturing facilities, personnel, and managing executives. The sworn statements also reveal that Akzo is not authorized to conduct any business, including the manufacturing of generic drugs, in Maryland or elsewhere in the United States. Akzo maintains no offices, telephone listings, mailing address, or bank accounts in Maryland. Because it does no business and has virtually no contacts in the United States, the district court found that Akzo had no reason to believe that its conduct would affect Maryland.
 
 
 17
 In light of this considerable quantum of proof, we cannot say that the district court erred in holding that the parent-subsidiary relationship between Akzo and PBI is insufficient to justify the exercise of personal jurisdiction over Akzo by the Maryland courts. Akzo and PBI have studiously observed all corporate formalities. Mylan, by contrast, offered no persuasive evidence below to counter Akzo's representation that PBI is an autonomous corporation whose operations, management, and finances are entirely independent of Akzo. The existence of an employment relationship between Van Hulst and Akzo, though it draws the question closer, does not inherently make PBI a corporate agent of Akzo. The district court properly declined to infer from Van Hulst's resume that Akzo imposed Van Hulst as chief executive officer on PBI, or that Akzo interfered with Van Hulst's management of PBI in any manner.
 
 
 18
 Mylan also contends that an agency relationship exists between Akzo and PBI because Akzo owns, albeit indirectly, 100 percent of PBI's common stock. Even assuming that this assertion is true, Maryland law expressly rejects Mylan's argument. "[A] foreign corporation is not construed as doing business within a state merely because of its ownership of all of the shares of stock of another corporation doing business in the state." Vitro Elec. v. Milgray Elec., Inc., 255 Md. 498, 502, 258 A.2d 749, 751 (1969). Accordingly, we decline to acknowledge an agency relationship solely on the basis of Akzo's ownership interest in Akzo Pharma.
 
 
 19
 Finally, Mylan attempts to establish the existence of an agency relationship between Akzo and PBI by contending that certain allegedly criminal acts of PBI employees, committed to procure rapid disposition of PBI's ANDAs by the FDA, were performed for Akzo's benefit. Although it is undoubtedly true that a corporation is liable for the criminal acts of its employees and agents done within the scope of their employment with the intent to benefit the corporation, see, e.g., United States v. Basic Constr. Co., 711 F.2d 570, 573 (4th Cir.1983) (per curiam), Mylan failed to adduce evidence below that PBI's employees intended to benefit Akzo when they undermined the drug-approval procedures of the FDA. Moreover, the proof adduced offers no indication that Akzo knew, or should have known, of the PBI employees' crimes at the time they were committed. Even if it is true that the PBI employees were acting within the scope of their employment, the lack of any agency relationship between Akzo and PBI preserves Akzo from liability for their behavior.
 
 
 20
 As the preceding paragraphs reveal, the Maryland courts' "agency" test for piercing the corporate veil relies on common-law agency principles. Together with the Maryland Court of Appeals, therefore, see Vitro Elec., 255 Md. at 502-03, 258 A.2d at 751-52, we consider the veil-piercing issue herein and the Maryland long-arm statute's agency inquiry to be virtually identical. Because we conclude that Mylan has not adduced sufficient proof of Akzo's involvement in the affairs of PBI to warrant piercing the veil between parent and subsidiary, we likewise decline to construe the Maryland long-arm statute as authorizing the Maryland courts to assert jurisdiction over Akzo on agency grounds. We therefore reject Mylan's "agency" theory of personal jurisdiction.
 
 
 21
 As we have explained elsewhere herein, whether a court may assert personal jurisdiction over a particular foreign defendant is a two-part, conjunctive inquiry. See, e.g., Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102-03, 108 S.Ct. 404, 408-09, 98 L.Ed.2d 415 (1987). Because we hold that the Maryland long-arm statute does not authorize the Maryland courts to assert personal jurisdiction over Akzo, we need not consider whether Akzo has sufficient "minimum contacts," see, e.g., International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), with Maryland to justify service of process on Akzo under the Due Process Clause of the Fourteenth Amendment.III
 
 
 22
 Mylan also contends that the district court abused its discretion in refusing to allow Mylan to take discovery on the personal jurisdiction question.
 
 
 23
 Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted. See Fed.R.Civ.P. 26(b)(1) advisory committee's note. Yet we agree with the Court of Appeals for the District of Columbia Circuit that district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." In re Multi-Piece Rim Prods. Liab. Litig., 653 F.2d 671, 679 (D.C.Cir.1981). Although limited discovery may be warranted to explore jurisdictional facts in some cases, see McLaughlin v. McPhail, 707 F.2d 800, 806-07 (4th Cir.1983) (per curiam), we cannot say that this was such a case. The district court did not abuse its discretion in denying further discovery when, as here, Mylan had ample opportunity to take discovery and the pleadings contained no specific facts that could establish the requisite contacts with Maryland. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C.Cir.1983), cert. denied sub. nom. Naartex Consulting Corp. v. Clark, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); McLaughlin, 707 F.2d at 807. Accordingly, we uphold the district court's denial of further discovery.
 
 IV
 
 24
 For the foregoing reasons, the district court's dismissal of Akzo for want of personal jurisdiction is
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The District of Columbia district court transferred the case to the District of Maryland because none of the overt acts Mylan alleged in support of its RICO claims occurred in the District of Columbia, and because all of the other significant events involved in the litigation took place in Maryland. In so ruling, the court relied on Lamont v. Haig, 590 F.2d 1124 (D.C.Cir.1978), in which the Court of Appeals for the District of Columbia Circuit held that venue is conferred on a district under the general venue statute, 28 U.S.C. Sec. 1391(b), "where a substantial portion of the acts or omissions giving rise to the actions occurred...." Id. at 1134-35. See Mylan Labs. v. Akzo, N.V., No. 89-1671, slip op. at 13, 1990 WL 58466 (D.D.C. Mar. 26, 1990) (mem.)
 
 
 [2]
 In its brief, Mylan argues that two statutes authorize the district court to assert personal jurisdiction over Akzo: (1) the Maryland long-arm statute, Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103(b) (1989 & Supp.1992), and (2) the RICO service-of-process statute, 18 U.S.C. Sec. 1965(a). We observe that the RICO statute was not argued as a basis for jurisdiction below, and was not cited or discussed in the district court's memorandum order dismissing Akzo from the case. Mylan's failure to set up the RICO statute before the district court as an alternative authorization of personal jurisdiction effectively deprives us of appellate jurisdiction to entertain argument about the statute's construction. As Justice Black wrote half a century ago:
 Ordinarily an appellate court does not consider issues not raised below, for our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact.
 Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). We therefore decline to consider the effect of the RICO statute on the personal jurisdiction question presented herein.
 
 
 [3]
 With respect to the Maryland long-arm statute, these inquiries ultimately collapse into virtually the same analysis, because the Maryland Court of Appeals has construed the statute as intended to reach to constitutional limits. See Curtis v. State, 284 Md. 132, 150, 395 A.2d 464, 474 n. 7 (1978) (citing cases); see also Md.Cts. & Jud.Proc.Code Ann. Sec. 6-101(e) (1989 & Supp.1992) ("extend[ing] the personal jurisdiction ... of courts of the State and the power to serve process of those courts to any person on federal enclaves ... within the State to the fullest extent permitted by the Constitution and laws of the United States")
 
 
 [4]
 The Maryland long-arm statute reads:
 A court may exercise personal jurisdiction over a person, who directly or by an agent:
 (1) Transacts any business or performs any character of work or service in the State;
 (2) Contracts to supply goods, food, services, or manufactured products in the State;
 (3) Causes tortious injury in the State by an act or omission in the State;
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
 (5) Has an interest in, uses, or possesses real property in the State; or
 (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.
 Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103(b) (1989 & Supp.1992).
 
 
 [5]
 Although decisions of the United States District Court for the District of Maryland do not bind our deliberations, we note that over the past two decades that bench has handed down several thorough, scholarly examinations of corporate veil-piercing for jurisdictional purposes under the Maryland long-arm statute. See, e.g., Birrane v. Master Collectors, Inc., 738 F.Supp. 167, 169-70 (D.Md.1990); Translation Sys., Inc. v. Applied Technology Ventures, 559 F.Supp. 566, 567-68 (D.Md.1983); Finance Co. of Am. v. BankAmerica Corp., 493 F.Supp. 895, 903-08 (D.Md.1980); Quinn v. Bowmar Publishing Co., 445 F.Supp. 780, 786 (D.Md.1978); Call Carl, Inc. v. BP Oil Corp., 391 F.Supp. 367, 370-78 (D.Md.1975), aff'd in part, rev'd in part on other grounds, 554 F.2d 623 (4th Cir.), cert. denied, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); Holfield v. Power Chemical Co., 382 F.Supp. 388, 393 (D.Md.1974). In light of the Maryland courts' recent silence on this issue (we having been unable to uncover state-court caselaw on point since 1969), and because we believe that the district court decisions accurately reflect the Maryland courts' own interpretations of the long-arm statute, we cite to them as persuasive authority
 
 
 [6]
 Mylan urged the district court to consider several other "critical" facts about Akzo, including (1) Akzo's use of the United States District Court for the Eastern District of Virginia to protect its United States patent; (2) Akzo's alleged "ownership" of Bionetics Research, Inc., a medical research company with facilities in Rockville, Frederick, and Kensington, Maryland which, like some of its other American subsidiaries, uses the Akzo name and logo in advertising; (3) statements in Akzo's annual report for 1989 concerning Akzo's gross sales and the number of employees Akzo has in North America; and (4) the fact that Akzo's American Depository Receipts, or "ADRs," trade on the National Association of Securities Dealers Automated Quotation System (NASDAQ); (5) Akzo's use of its ADRs to acquire an American subsidiary; and (6) the guarantee of a $300 million line of credit for other Akzo American subsidiaries. In the face of Akzo's proof, the court declined to credit these facts as sufficient to establish a prima facie case of personal jurisdiction under the Maryland long-arm statute. We are prevented from reviewing the district court's decision, however, because Mylan has failed to argue these jurisdictional facts in its brief. See Fed.R.App.P. 28(a)(5), (b). We therefore conclude that Mylan has waived the arguments on appeal. See Shopco Distrib. Co. v. Commanding General, 885 F.2d 167, 170 n. 3 (4th Cir.1989) (noting that failure to comply with terms of former version of Fed.R.App.P. 28(a)(5) constitutes waiver of asserted claims)