Robert WEINSTEIN, et al., Plaintiffs,

v.

TODD MARINE ENTERPRISES, INC., FRP Industries, Inc., Miller Yacht Sales, Inc., and Marine Unlimited, Inc. Defendants.

No. CIV. A. 2:99CV1684.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 3, 2000.

Michael John Gardner, Williams, Mullen, Clark & Dobbins, PC, Virginia Beach, VA, Kimberly Ann Satterwhite, William Delaney Bayliss, Williams, Mullen, Clark & Dobbins, Richmond, VA, for defendants.

### Opinion and Order

DOUMAR, District Judge.

This matter is before the Court on Defendant Miller Yacht Sales, Inc.'s ("Miller Yacht") Motion to Dismiss for lack of personal jurisdiction and improper venue in accordance with Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs have responded to Miller Yacht's Motion to Dismiss by filing a Motion for Discovery on Issue of Personal Jurisdiction. For the reasons stated herein, Defendant Miller Yacht's Motion to Dismiss is **GRANTED** and Plaintiffs' Motion for Discovery on Issue of Personal Jurisdiction is **DENIED**.

### I. Factual and Procedural Background

This is an action by seven purchasers of Baha Cruisers Model 340 (the "Baha Cruisers") against the manufacturer of the vessels, FRP Industries, Inc. ("FRP"), and three dealers, Todd Marine Enterprises, Inc. ("Todd Marine"), Marine Unlimited, Inc. ("Marine Unlimited"), and Miller Yacht. The plaintiffs allege violations of the Magnuson–Moss Warranty Act, breach of contract, breach of warranties, negligence, and fraud in connection with the sale of seven Baha Cruisers.

Plaintiffs Robert Weinstein and William Freeman initially filed this suit in October 1999 against FRP and Todd Marine arising out of their purchase of two allegedly defective Baha Cruisers in Virginia.[1] In April 2000, Magistrate Judge Miller granted the plaintiffs' Motion for Leave to File

John Bryan Plumlee, Glen Alton Huff, Huff, Poole & Mahoney, Virginia Beach, VA, for plaintiffs.

---

1. Plaintiffs allege that the Baha Cruisers are defective in that they make water while underway due to serious structural defects in the design and construction of the vessels. Plaintiffs allege that the water ingress is the result of the misalignment of the propeller shaft through a dripless packing gland. In addition to the obvious problems that come with the unchecked flow of water through the vessels' shaft seal, Plaintiffs also maintain that salt water has invaded the engine compartments so as to induce extensive corrosion and cause severe fire hazards. *See* Pl.'s Amend. Compl. ¶ 8.

an Amended Complaint and Motion to Consolidate, resulting in the joining of two new defendants and five new plaintiffs. The five new plaintiffs were Riddleburger Bros., Inc., James Fox, Zbigniew DomZall, John Poulos, and Frank Pettisani. The two new defendants were Miller Yacht and Marine Unlimited.

Miller Yacht, a New Jersey Corporation with its principal place of business in Toms River, New Jersey, sold Baha Cruisers from its New Jersey dealership to four of the plaintiffs: Fox, DomZall, Poulos, and Pettisani. Fox, Poulos, and Petisani are all residents of the State of Maryland. DomZall is a resident of New Jersey.[2]

The plaintiffs concede that the sale and transactions surrounding these four vessels occurred in New Jersey, and were in no way connected to Virginia. *See* Pl.'s Br. at 2. The contracts for the sale of these four vessels were not executed or performed in Virginia. Miller Yacht owns no assets in Virginia, has never sold a boat in Virginia, never repaired a boat in Virginia, and never participated in a boat show in Virginia. *See* Miller Aff. ¶¶ 6–7, Def. Ex. A. Miller Yacht's only contacts with Virginia appear to be the occasional purchase of parts from a company in Virginia, a few advertisements in national publications that may be distributed in Virginia,[3] occasional advertisements on the Internet or World Wide Web that may be accessed from computers within Virginia that have Internet-access, and also some mailings to Virginia. *See id.* ¶¶ 8–10; Weinstein Aff. ¶¶ 4–6, Pl.Ex. 1. The isolated purchases of parts in Virginia took place over the phone and through the U.S. mails, and never amounted to more than a few hundred dollars a year. *See* Miller Aff. ¶ 8, Def. Ex. A. Miller Yacht has never had a physical presence in Virginia, and has never operated a store in Virginia. *See id.* ¶ 9.

Citing a complete lack of contacts between Miller Yacht and the Common-

wealth of Virginia, Miller Yacht did not answer the plaintiffs' amended complaint but instead filed a Motion to Dismiss for lack of personal jurisdiction and improper venue on June 23, 2000. The plaintiffs filed their response to Miller Yacht's motion on July 24, 2000, and simultaneously filed a Motion for Discovery on Issue of Personal Jurisdiction. The Court heard oral argument on the matter on Wednesday, September 27, 2000. Thus, the issues have been argued and fully briefed and the matter is ripe for adjudication.

## II. Analysis

### A. The Personal Jurisdiction Issue

1. *The Subject–Matter Jurisdiction of this Court in this Case is Federal Question.*

Although both the Plaintiffs and Defendant seem to have glossed over this fact, it is of some significance that the Court's subject-matter jurisdiction in this case is federal question under 28 U.S.C. § 1331, not diversity of citizenship. Plaintiffs are asserting violations of the Magnuson–Moss Warranty Act as the basis for the Court's subject-matter jurisdiction, and the Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

Until recently, the Supreme Court had not decided a personal jurisdiction question in a nondiversity case. Indeed, the "minimum contacts" doctrine originated in a line of cases that dealt only with the jurisdictional powers of state courts. *See* 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.1 at 306 (2d ed. 1987 & Supp.2000). The doctrine spread to the federal courts in diversity cases, but the peculiarity of federal courts when adjudicating federally created rights being bound by limitations "developed under the Fourteenth Amendment," which by its own terms only applies to the states, led a number of federal courts to

---

**2.** Plaintiffs Weinstein and Riddleburger Bros. are Virginia residents, while Freeman is a Maryland resident.

**3.** These publications include Salty Dog Magazine, Boat Trader Magazine, and Yacht Trader Magazine. *See* Weinstein Aff., Pl.Ex. 1 ¶ 4.

adopt a "national contacts" standard in federal question cases. *See id.* at 310.

■ The Fourth Circuit, like several other federal circuits, has held a "national contacts" standard applicable when federal law authorizes nationwide service of process. *See Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989, 991 (4th Cir.1984) (nationwide service under Bankruptcy Rule 704) ("Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with [Fifth Amendment] due process, the service of process is sufficient to establish jurisdiction of the federal court over the person of the defendant"). In situations like the present case, however, where the Magnuson–Moss Act does not authorize nationwide service, the circuits have been divided as to whether a "national contacts" standard is applicable, and, if so, what the standard should be. *See* Wright & Miller, § 1067 at 312–332, and cases cited therein. The Supreme Court addressed the question in *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). In *Omni*, the Court seems to have recognized that the applicable constitutional provision limiting a federal court's exercise of personal jurisdiction in federal question cases is not the Fourteenth Amendment, but the Fifth Amendment. *See id.* at 102–03, 108 S.Ct. 404. The *Omni* Court clearly concluded, however, that the Due Process Clause was not the only limit on a federal court's in personam jurisdiction in such cases. Rather, it held that when there is no provision authorizing nationwide service, federal courts must also follow Rule 4(k) of the Federal Rules of Civil Procedure, which, *inter alia*, limits a court's exercise of personal jurisdiction to persons who can be reached by the forum state's longarm statute. *Id.* at 108, 108 S.Ct. 404.

In Virginia, as in many other states, at least portions of the state's long-arm statute are intended to be coterminous with the reach of the Due Process Clause of the Fourteenth Amendment. The Virginia long-arm statute provides that a corporation "transacting any business in this Commonwealth" is subject to the personal jurisdiction of a court in Virginia. Va.Code. Ann. § 8.01–328.1. The Supreme Court of Virginia has interpreted the "transacting business" element of the long-arm statute to extend jurisdiction over "nonresidents who engage in some purposeful activity in [Virginia] to the extent permissible under the Due Process Clause of the Constitution of the United States." *Nan Ya Plastics v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388 (1989). "Therefore, the real limitation on the exercise of personal jurisdiction under the 'transacting business' provision is the Due Process Clause of the Fourteenth Amendment." *Industrial Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F.Supp. 925, 927 (W.D.Va.1990). Accordingly, the end result of *Omni* is to require a federal court in Virginia to apply in federal question cases in which there is no provision for nationwide service an in personam jurisdiction test very similar to that used in diversity cases.

### 2. Analyzing Personal Jurisdiction is a Two–Step Process

As in diversity cases, a court sitting pursuant to federal question jurisdiction must engage in a two-step analysis. The first step is identical to that in diversity cases—the court must determine whether authorization for service of process is established under the state's long-arm statute and, in states like Virginia, this inquiry will focus on whether the due process requirements of the Fourteenth Amendment are satisfied. *Compare Omni*, 484 U.S. at 108, 108 S.Ct. 404, *with English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). If jurisdiction is proper under Virginia's long-arm statute, the second step, again as in diversity cases, is to determine whether the exercise of personal jurisdiction complies with the due process requirements of fair play and substantial justice. While there is some uncertainty as to the proper application of this second step, *Omni* sug-

gests that in federal question cases, it is the Due Process Clause of the Fifth Amendment that governs this second step, rather than the Due Process Clause of the Fourteenth Amendment, which controls in the second step in diversity cases. *See Omni*, 484 U.S. at 102–103; *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1560 n. 1 (Fed.Cir.), *cert. dismissed,* 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991); *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293 (3rd Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir.1975).

### 3. *Plaintiffs Have the Burden of Proving Personal Jurisdiction*

Plaintiffs bear the burden of proving that Miller Yacht is subject to the personal jurisdiction of the Virginia courts. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). In determining whether Plaintiffs can establish personal jurisdiction, the Court is required to "draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.* An appellate court will review the district court's legal conclusions de novo, and its findings of fact are accepted unless clearly erroneous. *Id.*

### 4. *The "Transacting Business" Element of the Long–Arm Statute and the Due Process Clause*

Plaintiffs argue that Miller Yacht is subject to service and thus personal jurisdiction under the "transacting business" element of the Virginia long-arm statute. The Supreme Court of Virginia has interpreted the "transacting business" element of the long-arm statute to extend jurisdiction over "nonresidents who engage in some purposeful activity in [Virginia] to the extent permissible under the Due Process Clause of the Constitution of the United States." *Nan Ya Plastics v. DeSantis,* 237 Va. 255, 259, 377 S.E.2d 388 (1989). Thus, the long-arm statute is sat-

isfied whenever the constitutional requirements are met.

■ It is well-settled that the Due Process Clause of the Fourteenth Amendment no longer requires that a defendant be physically present in the state in order for the state to exercise jurisdiction over the defendant. *See Hanson v. Denckla,* 357 U.S. 235, 250–251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945 (4th Cir.1994). Nonetheless, it is equally well established that a defendant must have certain "minimum contacts" with the forum state. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

In defining the "minimum contacts" needed to establish personal jurisdiction, the Supreme Court has required that the defendant "purposely avail[ ] itself of the privilege of conducting activities within the forum State ...." *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. In other words, the actions initiated by the defendant must be "purposefully directed" at the forum state, creating a " 'substantial connection' " with that state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). The basic premise behind the minimum contacts analysis is that the defendant's own actions must be such as to put it on notice of the possibility of defending itself in the forum state. Thus, the defendant "should reasonably anticipate being haled into court there." *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In the Fourth Circuit, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick,* 35 F.3d at 945.

5. *Personal Jurisdiction May be Either General or Specific*

Personal jurisdiction may be founded on either of two theories: general or specific jurisdiction. When "a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993) (internal quotations omitted). Indeed, those contacts must be "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast, when a suit arises out of the defendant's activities with the forum state then a court may exercise specific jurisdiction. *See Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989); *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868. In such a case, the contacts need not be so extensive, but "the 'fair warning' requirement inherent in due process still demands that the defendant 'purposely directed' its activities at the forum." *Federal Ins.,* 886 F.2d at 660 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

6. *Plaintiffs Must Prove General Personal Jurisdiction*

Plaintiffs have conceded that if this Court has personal jurisdiction over Miller Yacht, it is general jurisdiction and not specific, as none of the Plaintiffs' claims against Miller Yachts arise out of Miller Yacht's contacts with Virginia. Thus, the sole inquiry here is limited to whether Miller Yacht's contacts with Virginia are "fairly extensive" or "systematic and continuous" so as to warrant the assertion of general personal jurisdiction. *See Nichols,* 991 F.2d at 1199; *Helicopteros,* 466 U.S. at 408, 104 S.Ct. 1868.

7. *Miller Yacht's Contacts with Virginia*

Plaintiffs assert that "Miller Yachts is subject to general, personal jurisdiction because the quantity and nature of its contacts with Virginia are, upon information and belief, continuous and fairly extensive, such that Miller Yachts could reasonably expect to be subject to suit in Virginia for causes of action not directly related to its contacts with Virginia." Pl.'s Br. at 4. In support, the Plaintiffs rely on an affidavit from the lead Plaintiff, Robert Weinstein, in which Weinstein states that (1) Miller Yachts advertises in several national magazines that are distributed in Virginia; (2) advertising for boats sold by Miller Yachts can be accessed via the Internet from a computer located within Virginia; and (3) Miller Yacht mails product information directly into Virginia. *See* Weinstein Aff. ¶¶ 4–6, Pl.Ex. 1. Each of these alleged "contacts" with Virginia will be analyzed below.

a. *Miller Yacht's Advertisements in National Magazines*

█ Plaintiffs first source of "contacts" between Virginia and Miller Yacht—Miller Yacht's advertisements in national magazines that are distributed in Virginia—is insufficient to support a finding of "systematic and continuous" contacts between Virginia and Miller Yacht. As this Court has held, a few advertisements in national publications is insufficient to establish personal jurisdiction. *See DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 426 (E.D.Va.1996) (Ellis, J.) ("Hafner placed one advertisement that ran on two or three occasions in a national publication distributed in Virginia. That action by itself does not amount to 'regular solicitation' of business there. To find otherwise would potentially subject Hafner or any other party to Virginia's jurisdiction whenever it advertises nationally."); *see also Gehling v. St. George's School of Medicine,* 773 F.2d 539 (3rd Cir.1985) (holding that foreign college's advertisements in national publications such as the Wall Street Journal and the New York Times that were distributed in Pennsylvania did not constitute "systematic and continuous" contacts between the college and Pennsylvania nec-

essary to establish personal jurisdiction). Thus, without more, Miller Yacht's advertisements in various national publications do not establish "systematic and continuous" contacts between Miller Yacht and Virginia.

### b. *Miller Yacht's Passive Internet Activity*

 Plaintiffs second source of "contacts" between Virginia and Miller Yacht— the fact that Weinstein was able to locate advertisements for Miller Yacht on the Internet from a Virginia computer terminal—is also insufficient to support a finding of "systematic and continuous" contacts between Virginia and Miller Yacht. Attached to Weinstein's affidavit is a computer print-out that appears to represent the precise advertisements *for* Miller Yacht that Weinstein located.

These Internet advertisements did not come from any Web site hosted by Miller Yacht, nor does it appear that Miller Yacht has such a Web site. Rather, these are advertisements located at "BoatTrader.Com," which is an on-line classified advertisements service. As such, the present case "demonstrates a question of law that has, in the Eastern District of Virginia and elsewhere, been significantly settled." *Roche v. Worldwide Media, Inc.*, 90 F.Supp.2d 714, 717 (E.D.Va.2000) (Lee, J.); *see also Rannoch, Inc. v. The Rannoch Corp.*, 52 F.Supp.2d 681, 684–86 (E.D.Va.1999) (Ellis, J.) (explaining that "the placement of [a] web site on the Internet with knowledge of the possibility that the site might be accessed in Virginia" is not an act directed toward the forum state for purposes of due process); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) ("A passive Web site that does little more than make information available to those [in foreign jurisdictions] who are interested in it is not grounds for the exercise [of] personal jurisdiction."); *cf. Atlantech Distribution, Inc. v. Credit General Insurance Co.*, 30 F.Supp.2d 534, 536–37 (D.Md.1998) ("Although this is a developing area of law, court's addressing the

effect of a company's Internet presence on personal jurisdiction are in agreement that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.' ").

These authorities all indicate that passive advertisements on the Internet, such as those that Plaintiff Weinstein attaches to his affidavit, are insufficient to support a finding of "systematic and continuous" contacts between Virginia and Miller Yacht necessary to subject Miller Yacht to general personal jurisdiction in this forum. *See, e.g., Roche*, 90 F.Supp.2d at 718–19. As this Court observed in *Roche*, "[g]iven the indefinable and infinite nature of the Internet, and the accessibility of the World Wide Web to anyone with a laptop computer and a telephone line, such a finding would not only be unconstitutional, but egregiously impractical for purposes of judicial economy." *Roche*, 90 F. Supp 2d at 719. Accordingly, this Court in the instant case refuses "to extend 'traditional notions of fair play and substantial justice' to such indeterminable boundaries," *Roche*, 90 F. Supp 2d at 719, and Miller Yacht's passive Web activity, without more, does not establish general personal jurisdiction in Virginia.

### c. *Miller Yacht's Alleged Mail Solicitations*

 Plaintiffs third and final source of "contacts" between Virginia and Miller Yacht is Plaintiff Weinstein's allegation that Miller Yacht "does mail product information directly into Virginia." Weinstein Aff. ¶ 6, Pl.Ex. 1. Unlike Miller Yacht's Internet advertisements, Weinstein does not attach to his affidavit any such information allegedly mailed by Miller Yacht into Virginia, and it is not clear whether Miller Yacht may have mailed such information at Weinstein's request. Nevertheless, assuming as this Court must that Weinstein's allegations are true, while this may serve as a basis for specific jurisdic-

tion if the Plaintiffs' claims against Miller Yacht arose from Miller Yacht's mailings into Virginia, occasional mailings to Virginia, without more, will not support a finding of "systematic and continuous" contacts between Virginia and Miller Yacht necessary to the assertion of general personal jurisdiction over Miller Yacht. *See Helicopteros*, 466 U.S. at 408, 104 S.Ct. 1868; *see also Gehling*, 773 F.2d at 542; *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 747 (4th Cir.1971) (holding that isolated advertisements and solicitations within the forum do not establish general personal jurisdiction).

### 8. *Conclusion*

■ Considered in aggregate, Miller Yacht's contacts with Virginia are neither "fairly extensive" or "systematic and continuous" so as to support a finding of general personal jurisdiction. As such, Miller Yacht is not amenable to service of process under Virginia's long-arm statute, and the Court also finds that the assertion of jurisdiction over Miller Yacht would offend traditional notions of fair play and due process under the Due Process Clause. Accordingly, for the reasons stated herein, Miller Yacht's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.**

### B. *The Venue Issue*

■ Miller Yacht also moves to dismiss this case for improper venue under the federal venue statute, 28 U.S.C. § 1391(b). Since this Court has already decided in favor of Miller Yacht's Motion to Dismiss on the issue of personal jurisdiction, the issue of proper venue need not be reached. The Court notes, however, that no part of § 1391(b) appears to support venue over this action, with respect to Miller Yacht, in the Eastern District of Virginia. The Plaintiffs allege that "venue is proper because a substantial part of the events giving rise to claims herein occurred in this district." If this were true, the Court would have venue over the action under § 1391(b)(2). A substantial part of the events in the instant case, however, did not

occur in Virginia but rather occurred in New Jersey. Four of the seven boat sales at issue occurred in New Jersey, and all of the events that connect Miller Yacht to this suit occurred in New Jersey. Thus, venue would not be proper under § 1391(b)(2).

Venue is also not proper under the other two subparts of § 1391(b). First, since Miller Yacht is not subject to personal jurisdiction in Virginia, then they also do not "reside" in the Eastern District of Virginia so that venue would be proper under ´ § 1391(b)(1). Second, under § 1391(b)(3), venue is proper "in a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Not only is Miller Yacht not subject to jurisdiction in Virginia, but the Plaintiffs are unable to show that there is no other jurisdiction where this action may be brought. Indeed, the Plaintiffs could bring their claims against Miller Yacht in the New Jersey or Maryland courts, and expressed an interest in doing precisely that during oral argument on this matter. Accordingly, Miller Yacht's Motion to Dismiss is GRANTED pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue.

### C. *The Discovery Issue*

■ In response to Miller Yacht's Motion to Dismiss, Plaintiffs filed a Motion for Discovery on Issue of Personal Jurisdiction, stating that:

[f]urther evidence necessary to establish Miller Yacht's continuous and systematic contacts with Virginia is within the exclusive control of Defendant Miller Yacht. Invoices, sales records, warranty claims, and labor reports must be gathered by Plaintiffs before the Court has an [sic] complete record with which to base a ruling on the issue of personal jurisdiction.... While many inferences can be made, a complete and accurate picture of Miler [sic] Yacht's boat sales · in Virginia cannot be presented without

more information. Miller Yacht has this information, and Plaintiffs must retrieve it from Miller Yacht. Pl.'s Br. at 5.

A district court may allow a party asserting jurisdiction to conduct discovery to help establish the jurisdictional facts, and the court of appeals will overturn that determination only for abuse of discretion. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 697, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (4th Cir.1993). In *Mylan,* the Fourth Circuit held that the district court did not abuse its discretion in denying discovery on the issue of personal jurisdiction where the plaintiff had ample opportunity to take discovery and the pleadings contained no specific facts that could establish the requisite contacts between the defendant and the forum. *See Mylan,* 2 F.3d at 64; *see also McLaughlin v. McPhail,* 707 F.2d 800, 807 (4th Cir. 1983) (holding that district court did not abuse its discretion in refusing to allow complainant to depose the defendants for purpose of establishing in personam jurisdiction where complainant offered nothing beyond his bare allegations that defendants had significant contacts with forum state and failed to otherwise produce any documentary evidence in support); *Rich v. KIS California,* 121 F.R.D. 254, 259 (M.D.N.C.1988) (holding that court need not permit even limited discovery on issue of personal jurisdiction, where plaintiff's claim that jurisdiction existed appeared too attenuated and based on bare allegations in face of specific denials by defendant, and concluding that discovery would amount to mere "fishing expedition").

In the instant case, the only basis that Plaintiffs have thus far asserted to support a finding of "continuous and systematic" contacts between Miller Yacht and Virginia is Miller Yacht's national advertisements or solicitations that are distributed in Virginia. As such, a case from the District of Columbia Court of Appeals provides persuasive authority against the Plaintiffs' position on the discovery issue.

In *Carribean Broadcasting Systems, Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1089-90 (D.C.Cir.1998), the D.C. Circuit held that the district court did not abuse its discretion in denying discovery on the issue of personal jurisdiction. *See id.* The district court found that the defendant had no contacts with the forum, with the possible exception of some national advertisements and solicitations that may have landed in the District of Columbia. *See id.* Since the plaintiff alleged no other facts suggesting that the defendant had minimal contacts with the forum, the district court's refusal to grant additional discovery was proper. *See id.*

The only authority favorable to their position that Plaintiffs have brought to the Court's attention is *Coastal Video Communications Corp. v. The Staywell Corporation,* 59 F.Supp.2d 562 (E.D.Va.1999) (Smith, J.), a case in which Judge Smith reserved ruling on the defendant's Motion to Dismiss for lack of personal jurisdiction where "significant gaps in the record" existed regarding "defendant's traditional business contacts with Virginia and also defendant's Internet-based contacts with Virginia." Id. at 571. Since these "gaps" could only be filled from information and documents within the exclusive control of the defendant, Judge Smith granted the plaintiff's motion for discovery on the issue of personal jurisdiction. *See id.* Upon review, however, *Coastal Video* is not similar to the facts of the instant case. In *Coastal Video,* the defendants maintained interactive Web sites and the evidence also indicated that, historically, the defendants had engaged in the sale and distribution of various products within Virginia. *See id.* at 563–64. The defendants also maintained a registered agent in Virginia. *See id.* Accordingly, the evidence in *Coastal Video* pointed toward a finding of personal jurisdiction over the defendants, and the order of additional discovery was thus within the discretion of the district court.

In the instant case, however, the evidence falls far short of pointing toward a

finding of personal jurisdiction over Miller Yacht. Given the lack of a substantial basis for personal jurisdiction over Miller Yacht thus presented by Plaintiffs, it appears that any discovery propounded by Plaintiffs against Miller Yachts would be a pure fishing expedition. The Court also notes that to date Plaintiffs have not propounded any interrogatories to Miller Yacht, nor have the Plaintiffs submitted any proposed interrogatories to the Court. Finally, at oral argument on this matter, the Court offered the Plaintiffs an opportunity to conduct discovery against Miller Yacht on the narrow issue of personal jurisdiction on special terms. Those terms were that if, after the conclusion of such discovery, Plaintiffs were unsuccessful in their attempt to build a case for personal jurisdiction against Miller Yacht, then Plaintiffs would reimburse Miller Yacht for any legal fees spent defending Plaintiffs' discovery requests. Plaintiffs' counsel was unwilling to conduct discovery on these terms. These factors all militate against granting discovery, and therefore Plaintiffs' Motion for Discovery on Issue of Personal Jurisdiction is **DENIED.**

### VI. Conclusion

For the reasons stated herein, Miller Yacht's Motion to dismiss for lack of personal jurisdiction and improper venue is GRANTED, and Plaintiffs' Motion for Discovery on Issue of Personal Jurisdiction is DENIED.

The Clerk of the Court is **DIRECTED** to forward copies of this Order to all counsel of record.

**IT IS SO ORDERED.**