ESTATE of Stephen BANK, et al.

v.

SWISS VALLEY FARMS, CO.

No. CIV. JFM–02–3102.

United States District Court,
D. Maryland.

Sept. 30, 2003.

Nathan I. Finkelstein, Bethesda, MD, Laurie B. Horvitz, Finkelstein and Horvitz, Bethesda, MD, for Edith Bank.

James J. O'Neill, III, Harold M. Walter, Tydings and Rosenberg, LLP, Baltimore, MD, for Swiss Valley Farms Co.

## MEMORANDUM

MOTZ, District Judge.

This action has been brought by the Estate of Stephen Bank, et al. ("the Estate") against Swiss Valley Farms, Co. ("Swiss Valley"). Decedent Stephen Bank was an employee of Swiss Valley, Co., an Illinois corporation involved in the manufacture and distribution of dairy products. The Estate alleges various tort claims against Swiss Valley in connection with the alleged exposure of Mr. Bank to harmful chemicals during his employment.

Swiss Valley has filed a motion to dismiss for lack of personal jurisdiction, or in the alternative for failure to state a claim upon which relief may be granted. For the reasons stated below, this court holds that it cannot exercise personal jurisdiction over defendant. Pursuant to 28 U.S.C. § 1406, this case is transferred to the Southern District of Iowa.

## I.

Defendant Swiss Valley employed Stephen Bank at two of its dairy laboratories in Iowa from 1981 to 1993. Following the culmination of his employment with Swiss Valley, Mr. Bank relocated to Maryland. Plaintiffs allege that during the term of his employment, Mr. Bank was repeatedly exposed to harmful chemicals, and contracted acute mylogeous leukemia as a result. Mr. Bank died on November 2, 2001, more than a year after being diagnosed with leukemia.

After Mr. Bank's death, his family learned that he had been exposed to hazardous chemicals during his tenure at Swiss Valley, and that other Swiss Valley employees who had worked in the same laboratories had also developed cancer. Plaintiffs have sued Swiss Valley alleging various tort claims arising out of the circumstances surrounding Mr. Bank's death.

Swiss Valley is an Illinois corporation with its principal place of business in Iowa. It has no resident agent in Maryland, maintains no employees in Maryland and is neither qualified nor registered to do

business in Maryland. (Affidavit of S. Woodworth, Exhibit A to Defendant's Motion to Dismiss at ¶ 5, 18). Swiss Valley has never sold, and does not presently sell any products in the state of Maryland, nor has it otherwise transacted business in the state of Maryland. (*Id.* at ¶ 7, 10, 14). It has no place of business, offices, warehouses, branches, dealers or franchisees in Maryland. (*Id.* at ¶ 8). The entirety of the corporation's employment relationship with Mr. Bank transpired in Iowa.

Until early May 2003, Swiss Valley maintained a website which permitted the online sale of goods to consumers throughout the United States. This site was discontinued on May 1, 2003 allegedly due to lack of sales. (Second Affidavit of S. Woodworth, Exhibit A to Defendant's Reply Memorandum in Support of Motion to Dismiss at ¶ 3). Plaintiffs offer no statistics on the volume of business Swiss Valley transacted through the website, and no evidence of any sales to Maryland residents. Swiss Valley asserts that it has not made any sales to Maryland residents through the website or otherwise. (*Id.* at ¶ 1). In addition to its website, Swiss Valley maintains a toll-free hotline through which orders may be placed, and distributes its products in twenty-five states.[1]

## II.

■ When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993). This burden requires the plaintiff to produce competent evidence to

sustain jurisdiction, including, for example, sworn affidavits. *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 235 (D.Md.1992). If the jurisdiction issue is decided without a hearing, the plaintiff is required only to make a *prima facie* showing of jurisdiction. *Mylan*, 2 F.3d at 60.

■ In determining the existence of jurisdiction, the court should draw all "reasonable inferences" from the proof offered by the parties in the plaintiff's favor. *Id.* at 62. This does not mean, however, that the courts must "look solely to the proof presented by the plaintiff in drawing such inferences." *Id.* Rather, the court must consider "all relevant pleading allegations in the light most favorable to the plaintiff," and draw reasonable inferences therefrom. *Id.*

## III.

"A federal court sitting in diversity jurisdiction may exercise personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols*, 991 F.2d at 1199. Constitutional due process requires that a non-resident defendant have sufficient minimum contacts "such that the maintenance of the suit does not offend traditional notions of fair play or substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The Estate relies on Section 6–103(b)(4) of Maryland's long arm statute to assert jurisdiction over Swiss Valley. Md.Code Ann., Cts. & Jud. Proc. § 6–103(b)(4).

---

1. Swiss Valley's products are distributed and sold exclusively in Minnesota, Wisconsin, Illinois, Iowa, Missouri, Nebraska, Arizona, California, Colorado, Indiana, Massachusetts, Michigan, New Mexico, New Jersey, New York, Oklahoma, Pennsylvania, Kansas, Washington, North Dakota, South Dakota, Tennessee, Texas, Utah and Virginia. (Affidavit of S. Woodworth at ¶ 4).

That section provides for jurisdiction over persons who

cause tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

The Maryland Court of Appeals has consistently held that the long-arm statute is co-extensive with the requirements of due process, and thus the first and second inquiries may be performed as one. *Joseph M. Coleman & Associates, Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118 (D.Md.1995), *Mohamed v. Michael*, 279 Md. 653, 370 A.2d 551, 553 (1997).

 Under due process analysis, there are two types of personal jurisdiction: specific and general. Specific jurisdiction is available when the plaintiff's claim arises out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General jurisdiction is available only where the defendant's contacts with the forum state are "continuous and systematic." *Id.* at 415, 104 S.Ct. at 1872. The level of contacts required for the exercise of general jurisdiction is "significantly higher" than that required for the exercise of specific jurisdiction. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997).

The Estate's cause of action has not arisen from Swiss Valley's contacts with Maryland, and thus specific jurisdiction is not available. Moreover, plaintiffs do not assert that specific jurisdiction exists. General jurisdiction may be asserted however, if it can be shown that Swiss Valley has "continuous and systematic" contacts with Maryland. *Helicopteros*, 466 U.S. at 415, 104 S.Ct. at 1872.

Plaintiffs base their contention of general jurisdiction on Swiss Valley's operation of a website offering its products for sale.[2] Plaintiffs offer no evidence of any sales to Maryland residents via this website, but only suggest in the face of specific denials by defendant that such sales may have occurred, and occurred with such frequency that they provide the "continuous and systematic" contacts necessary for the exercise of general jurisdiction.[3]

 In the context of personal jurisdiction, the Fourth Circuit has cautioned that "broad constructions of general jurisdiction should be generally disfavored." *Nichols*, 991 F.2d at 1200. In fact, with regard to non-residents, general jurisdic-

---

**2.** Plaintiffs also contend that Swiss Valley's operation of a toll-free hotline number, acceptance of orders by facsimile, amenability of its sales representative to a purchase by a Maryland resident, and its possible joint venture with a company having a substantial presence in Maryland all suggest that Swiss Valley has made sales to Maryland residents and has derived substantial revenues therefrom. As with the website, plaintiffs offer no evidence of any sales made through the hotline or by facsimile to Maryland residents. In addition, defendant asserts by affidavit that the proposed joint venture was never formed, and, in any event, never anticipated doing business in Maryland. (Second Affidavit of S. Wood-

worth, at ¶ 4). In light of this lack of evidence, plaintiffs' claims must, of necessity, rest on Swiss Valley's operation of a website.

**3.** In response to defendant's affidavit declaring that Swiss Valley has made no sales to Maryland residents, plaintiffs argue, for example, that "it is *certainly possible* that sales to Maryland residents *could be sufficient* to obtain general jurisdiction," and that "the contacts between Swiss Valley and Maryland *could be more substantial* " than those present in a case with similar facts where general jurisdiction was found lacking (emphasis added)(Plaintiffs' Opposition to Defendant's Motion to Dismiss, 7).

tion is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered "essentially domiciled" within that state. *Atlantech Distribution, Inc. v. Credit Gen. Ins. Co.*, 30 F.Supp.2d 534 (D.Md.1998).

■ In light of this heightened standard, the Fourth Circuit has held that "limited advertising and solicitation" by a non-resident defendant in the forum state do not provide a sufficient basis for general jurisdiction. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971). Without evidence of actual sales made to Maryland residents, it would seem that the operation of a website that merely offers the possibility of transacting cannot be characterized as anything more than "advertising and solicitation," and thus is equally insufficient for jurisdictional purposes.

The Fourth Circuit has deemed general jurisdiction absent in circumstances where the defendant possessed far more substantial contacts with the forum state than exist between Swiss Valley and Maryland. In *Ratliff*, the defendant maintained five employees who resided in the forum state, promoted the company's products and occasionally took orders, and those contacts were deemed insufficient for general jurisdiction. *Id.* at 746. In *Nichols*, the court relied on *Ratliff* in finding general jurisdiction lacking where a pharmaceutical company maintained 17 to 21 employees in Maryland to perform advertising and solicitation functions, held meetings in Maryland three times a year, and accumulated annual revenue of between $9 and $13 million from its business in Maryland during a four year period. 991 F.2d at 1198, 1200. Finally, in *ESAB Group*, the court found no general jurisdiction even though the defendant had 26 customers who were residents of the forum state (representing 1% of all of its customers and .079% of

gross annual sales) and defendant had purchased between $10,000 and $20,000 worth of parts from a supplier in the forum state. 126 F.3d at 621.

The increasing use of the Internet as a medium for business has introduced new questions into the law of personal jurisdiction. Consistent with its caution against broad constructions of general jurisdiction, the Fourth Circuit has noted that while technological advances may alter the landscape of personal jurisdiction, "it nonetheless has remained clear that technology cannot eviscerate the constitutional limits on a state's power to exercise jurisdiction over a defendant." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir.2002).

The Fourth Circuit has explicitly rejected the notion that general personal jurisdiction may be founded on the basis of Internet presence alone.

> We are not prepared at this time to recognize that a State may obtain general jurisdiction over out of state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions. Something more would have to be demonstrated. And we need not decide today what that "something more" is because ALS Scan has shown no more.

*Id.* at 715. *See also Coastal Video Communications, Corp. v. Staywell Corp.*, 59 F.Supp.2d 562, 571–72 (E.D.Va.1999)(noting that the mere existence of an interactive website is insufficient for the exercise of general jurisdiction in the absence of proof of continuous and systematic contact between the forum state and the website).

Indeed, premising general personal jurisdiction on mere Internet presence would risk the evisceration of constitutional limits which the Fourth Circuit declared impermissible in *ALS Scan*. 293 F.3d at 711. If

presence alone were deemed sufficient, a non-resident defendant "would presumably be subject to general personal jurisdiction in every jurisdiction in the country, thereby allowing a plaintiff to sue it for any matter anywhere in the nation. This the Constitution does not permit." *Atlantech,* 30 F.Supp.2d at 537.

The Fourth Circuit did not articulate the "something more" required in addition to Internet presence for the exercise of general jurisdiction because the plaintiffs in *ALS Scan* failed to show anything more. 293 F.3d at 715. Similarly, plaintiffs in this case have failed to show anything more than Swiss Valley's Internet presence. Plaintiffs insist that Swiss Valley *may* have made sales to Maryland residents that would provide the requisite contacts, but several recent cases suggest that even evidence of actual sales to residents of the forum state may not satisfy the "something more" requirement. *See Robbins v. Yutopian Enterprises, Inc.,* 202 F.Supp.2d 426, 429 (D.Md.2002) (forty-six transactions with Maryland residents over a 10½ month period, made through a website and a toll-free number, deemed insufficient for the exercise of general personal jurisdiction). *Cf. Gator.Com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072, 1077–78 (9th Cir.2003) (holding that L.L. Bean's online business (sales of over $200 million in 2000, accounting for 16 percent of total sales) and its "consistent, ongoing and significant sales effort that has included California for a number of years," were sufficient for the exercise of general personal jurisdiction, but acknowledging that even given the defendant's high volume of online business, the case presented a "close question.").

Plaintiffs argue that the nature of Swiss Valley's website makes this court's exercise of jurisdiction permissible according to the "sliding scale" set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997), and adopted by the Fourth Circuit in *ALS Scan,* 293 F.3d at 713. Under the *Zippo* model, the constitutionality of exercising jurisdiction may be assessed according to the "nature and quality of commercial activity" conducted by a defendant over the Internet. *Zippo,* 952 F.Supp. at 1124. The model labels those websites that merely post information as "passive," and concludes that personal jurisdiction is not available over such sites. At the opposite end of the spectrum are websites where a defendant "clearly does business over the Internet," and personal jurisdiction is deemed proper with regard to those sites. While Swiss Valley's website might be characterized as "doing business" since it permitted visitors to order goods online, this characterization is of minimal relevance. First of all, defendant's website may have offered the possibility of "doing business," but plaintiffs present no evidence that any business has actually been transacted through the website. Secondly, the *Zippo* model was intended to apply to questions of specific jurisdiction, and specific jurisdiction is not at issue here. *See Atlantech,* 30 F.Supp.2d at 537. Lastly, although the *Zippo* test has been acknowledged to be of some use in analyzing general personal jurisdiction, the mere classification of the Swiss Valley website as capable of "doing business" over the Internet provides an insufficient basis for the exercise of general jurisdiction by this court without more. *Id.* (compiling cases). To conclude otherwise would permit the exercise of general jurisdiction on the basis of mere Internet presence, a result the Fourth Circuit has rejected. *ALS Scan,* 293 F.3d at 715.

Plaintiffs point to one case where general jurisdiction was found to be proper in part based on sales made to forum state residents through a website. *See Mieczkowski v. Masco Corp.,* 997 F.Supp. 782 (E.D.Tex.1998). This case, however; is readily distinguishable because the court

in *Mieczkowski* did not rely solely on website activity to justify jurisdiction, as plaintiffs would have this court do in the instant case. By contrast, the defendant company had sold and shipped nearly 6 million dollars worth of products to residents of the forum state over the preceding six years, and in the previous year alone, had concluded over 250 transactions with forum state residents, totaling over $700,000.00 in sales. *Id.* at 785. In addition, defendant's sales over the previous four years accounted for 3.2% of its gross sales income, a direct mailing was sent to residents twice a year which resulted in actual sales, and defendant purchased 0.2% of its furniture from a company in the forum state. *Id.* Finally, defendant operated a website that was accessible to 2.2 residents of the forum state. *Id.* In rendering its decision to exercise general jurisdiction, the court cautioned that it was not deciding "whether standing alone" the defendant's website was a sufficient basis for general jurisdiction, but rather that it was relying on the "combination" of traditional business contacts and the website. *Id.* at 788. Thus, *Mieczkowski* cannot guide the result here, where jurisdiction would have to be based on defendant's website "standing alone."

■ The Supreme Court has acknowledged that "a plaintiff's residence may, because of the defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984). However, having a plaintiff domiciled in the forum state is neither a necessary nor a sufficient condition for the exercise of personal jurisdiction. The Fourth Circuit has found general personal jurisdiction lacking where resident plaintiffs were involved and the defendant possessed more substantial contacts with the forum state than in the instant case. *ESAB Group,* 126 F.3d at 624. The court in *ESAB Group* noted that the defendant's contacts with South Car-

olina fell short of constitutional requirements despite the fact that "South Carolina courts in this case would be seeking to vindicate the interests of their own citizens." *Id.* The same result must follow here. While Maryland may have some interest in the resolution of this case since it was the state of residence of Mr. Banks, and continues to be the state of residence for Mr. Banks' dependents, that interest cannot overcome the otherwise insufficient showing of contacts made by plaintiffs.

### IV.

■ Plaintiffs request in their opposition that they be permitted to conduct limited discovery to establish sales to Maryland residents via Swiss Valley's website. This request will be denied.

The Federal Rules of Civil Procedure provide for broad discovery, however, they also vest substantial discretion in the district courts to resolve any discovery matters that arise. *See Mylan,* 2 F.3d at 64. For example, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir.2003). *See also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988)("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."). The Fourth Circuit has denied discovery in circumstances analogous to the instant case where the plaintiffs offered no more than bare allegations of sufficient contacts against affidavits by the defendants denying the existence of con-

tacts. *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir.1983).

Plaintiffs insist that discovery is necessary in order provide the court with details of sales Swiss Valley may have made to Maryland residents. Plaintiffs cite *Coastal Video* as support for its contention that discovery should be permitted. 59 F.Supp.2d 562. In *Coastal Video* the court granted plaintiffs' motion for discovery to investigate "significant gaps" in the record regarding the nature and extent of defendant's traditional business contacts and its Internet-based contacts with the forum state. *Id.* at 572. The defendant in that case maintained a registered agent in Virginia, was qualified to do business in Virginia, sold and distributed products in Virginia, sent catalogs and mailings containing order forms to Virginia residents, and operated a website through which online purchases could be made. *Id.* at 564. The evidence in *Coastal Video,* a combination of traditional and Internet-based contacts, "pointed toward a finding of personal jurisdiction," and thus, discovery was proper. *Weinstein v. Todd Marine Enter., Inc. et al.,* 115 F.Supp.2d 668, 676 (E.D.Va. 2000). Where, as here, the evidence "falls far short" of pointing towards personal jurisdiction, this court is within its discretion in denying discovery. *Id.* at 676–77. Granting plaintiffs' motion for discovery would authorize a "fishing expedition" for evidence of Internet sales to Maryland residents, the existence of which defendant affirmatively denies. *Id.* at 677.

Plaintiffs also suggest that this court should conclude that the affidavit of Swiss Valley's vice president of marketing is inaccurate because it fails to specifically mention the existence of the company's now inactive website. Defendant has asserted, in the form of affidavits, that no sales were made to Maryland residents through its now inactive website. Plaintiffs offer no evidence to the contrary.

Accordingly, the fact that defendant's motion to dismiss failed to make specific mention of an inactive website through which no contacts, sales or otherwise, were made with Maryland residents, does not compel this court to infer that the defendant's omissions were made in bad faith.

Finally, plaintiffs urge this court to infer from the timing of the discontinuance of the website by Swiss Valley (nearly two weeks prior to the filing of defendant's motion to dismiss) that sales were made to Maryland residents through the website. That is not a reasonable inference for this court to draw. If Swiss Valley were, in fact, conducting substantial business with Maryland residents via its website such that its contacts might rise to the level of "systematic and continuous," it is hard for this court to believe that defendant would discard an otherwise thriving online business merely to avoid suit in Maryland.

This court finds no evidence of fraud on the part of Swiss Valley or any indication of an intention to mislead. *Carefirst,* 334 F.3d at 403. Accordingly, plaintiffs' request for discovery on this matter will be denied.

## V.

Since this court has concluded that it cannot exercise personal jurisdiction over the defendant, it must be determined whether this case should be dismissed or transferred to another district. Pursuant to 28 U.S.C. § 1406(a), this court has the discretion to transfer the case to another federal district court in which the case could have been brought, if such transfer is in the interests of justice. Plaintiffs request that this court grant a transfer, and defendant urges this court to dismiss.

Defendant argues that transfer is inappropriate because plaintiffs have failed to demonstrate how their claim might be time-barred if transfer were not granted.

However, defendant misunderstands the intended role of section 1406(a), and the manner in which it has been interpreted by the courts. The Supreme Court has identified "a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication on the merits.'" *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C.Cir.1983)(quoting *Goldlawr v. Heiman*, 369 U.S. 463, 466–67, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962)). Transfer had been deemed proper under section 1406 "when there is an obstacle-either incorrect venue, absence of personal jurisdiction, or both-to a prompt adjudication on the merits in the forum where originally brought." *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir.1967).

■ In accordance with these precedents, the Fourth Circuit has adopted a reading of section 1406(a) authorizing transfer "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat*, 840 F.2d 255 (4th Cir. 1988). As mentioned above, lack of personal jurisdiction is one of the "impediments" upon which transfer may be premised. *See Dubin*, 380 F.2d at 816; *Sinclair*, 711 F.2d at 294. Thus, while transfer may be "particularly appropriate" where the plaintiff's cause of action would be time-barred in the event this court declined to transfer, this does not mean that transfer is unavailable where the statute of limitations has not yet run. *See Sinclair*, 711 F.2d at 294. By contrast, transfer may be properly granted to avoid any procedural complications which might result from dismissal, not solely to avoid those procedural complications which have already arisen. *See Robbins*, 202 F.Supp.2d at 431.

■ A district court does not abuse its discretion in denying transfer where the plaintiff's attorney has filed in an improper forum on the basis of "obvious error." *Nichols*, 991 F.2d at 1201–02. That is to say, transfer could be properly denied where "the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper." *Id.* at 1202. However, it is not clear to this court that the plaintiffs' selection of this forum was the result of "obvious error." Moreover, even assuming plaintiffs did make an "obvious error" in selecting Maryland as their forum, the district court is not thereby bound to deny a request for transfer. Rather, the Fourth Circuit held only that it would not disturb a district court's exercise of discretion in denying transfer where plaintiffs' made an "obvious error" in filing in the transferor court, and noted that this did not imply that a district court would "necessarily err" in granting transfer under such circumstances. *Id.* at 1202 n. 6.

■ Jurisdiction appears to be proper in the United States District Court for the Southern District of Iowa where the defendant's principal place of business is located, and where the alleged injuries took place. In light of the purposes underlying § 1406, and because defendant has not shown any countervailing concerns that weigh in favor of dismissal, transfer will be granted.

## VI.

Because this court has found that personal jurisdiction is lacking, defendant's 12(b)(6) motion regarding the exclusivity of the Iowa's workers' compensation as an avenue for pursuing plaintiffs' claims will not be considered.

For these reasons, this action will be transferred to the United States District Court for the Southern District of Iowa. A

separate order to that effect is being entered herewith.